# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| Patricia Evankavitch, | |
| Plaintiff | Docket  3:12-cv-02564-JMM<br>(JUDGE JAMES M. MUNLEY) |
| v. | |
| Green Tree Servicing, LLC,<br>Defendant | FILED ELECTRONICALLY |

## REPLY BRIEF IN SUPPORT OF PLAINTIFF'S FEE APPLICATION

s/ Carlo Sabatini
Carlo Sabatini
Bar Number: PA 83831
Sabatini Law Firm, LLC
216 N. Blakely St.
Dunmore, PA  18512
Attorney for Plaintiff
Phone (570) 341-9000
Facsimile (570) 504-2769
Email: ecf@bankruptcypa.com

TABLE OF CONTENTS

Table of Authorities ................................................................................................ iii

I.   Introduction.................................................................................................... 1

II.  Argument......................................................................................................... 1

   *1.    To avoid the need for judicial review over relatively minor entries,
   Plaintiff will withdraw most of the billing entries to which Defendant has
   objected.* ................................................................................................................ 2

   *2.    The Summary Judgment Motion was Useful and Fees Should not be
   Stricken.* ............................................................................................................... 6

   *3.    Plaintiff Obtained an Excellent Result and no Downward Adjustment is
   Warranted.* ........................................................................................................ 10

III. Conclusion.................................................................................................... 15

TABLE OF AUTHORITIES

# CASES

*Albrechtsen v. Bd. of Regents of the Univ. of Wisconsin Sys.*,
    309 F.3d 433 (7th Cir.2002) ............................................................5

*Andrews v. Prof'l Bureau of Collections of Maryland, Inc.*,
    270 F.R.D. 205 (M.D. Pa. 2010)(Nealon, J.) ...............................15

*APC Filtration, Inc. v. Becker*,
    2008 WL 548765 (N.D.Ill. Feb.25, 2008) ......................................5

*Bell v. United Princeton Properties, Inc.*,
    884 F.2d 713 (3d Cir. 1989) ......................................................2, 6

*Cabrales v. Cnty. of Los Angeles*,
    935 F.2d 1050 (9th Cir. 1991) ........................................................9

*Coleman v. Kaye*,
    87 F.3d 1491 (3d Cir.1996) ............................................................2

*Evans v. Port Auth. of New York & New Jersey*,
    273 F.3d 346 (3d Cir. 2001) ..........................................................2

*Former Employees of BMC Software, Inc. v. U.S. Sec'y of Labor*,
    519 F.Supp.2d 1291 (Ct. Int'l Trade 2007) ...................................5

*Graziano v. Harrison*,
    950 F.2d 107 (3d Cir. 1991) ................................................. 12, 13

*Jacobson v. Healthcare Fin. Servs., Inc.*,
    516 F.3d 85 (2d Cir. 2008) ..........................................................14

*Lohman v. Borough*,
    2008 WL 2951070 (M.D. Pa. July 30, 2008) .................................. 7, 16, 17

*Millea v. Metro-N. R. Co.*,
    658 F.3d 154 (2d Cir. 2011) ........................................................17

*Planned Parenthood of Cent. New Jersey v. Attorney Gen. of State of New Jersey*,
    297 F.3d 253 (3d Cir. 2002) .........................................................................7, 8

*Reese v. CNH Global N.V.*,
    2008 WL 2546936 (E.D. Mich. June 20, 2008) *vacated sub nom. Reese v.*
    *CNH Am. LLC*, 574 F.3d 315 (6th Cir. 2009) and *order reinstated,* 2011 WL
    824585 (E.D. Mich. Mar. 3, 2011) *rev'd sub nom. Reese v. CNH Am. LLC*,
    694 F.3d 681 (6th Cir. 2012) ..........................................................................6

*Rode v. Dellarciprete*,
    892 F.2d 1177 (3d Cir. 1990) ..........................................................................2

*Smith v. Philadelphia Housing Authority*,
    107 F.3d 223 (3d Cir.1997) ..........................................................................2

*Tolentino v. Friedman*,
    46 F.3d 645 (7th Cir. 1995) ..........................................................................13

*Weiss v. Regal Collections*,
    385 F.3d 337 (3d Cir. 2004) ..........................................................................14

## STATUTES

15 U.S.C. § 1692k(a)(2)(A) ......................................................................................12

## I.   INTRODUCTION

Plaintiff will not contest some of Defendant's objections. However, the relatively small amount of the fees at issue in those objections is more than offset by the 10% discount that Plaintiff's counsel applied to the bill *after* having already discounted over $17,000.00 in the exercise of billing judgment. That 10% supplemental discount amounts to $9,145.48. It was applied to offset any minor issues that the Defendant had with the bill, so that those issues would not have to be presented to the Court. As the sum of the specific objections that Defendant has raised is substantially less than this $9,145.48 cushion, the original application should be allowed in its entirety. Also, Plaintiff now requests an additional $6,673.50 for the time spent on the briefs in support of this motion. The requested time is in the range of the 10 – 30 hours that Plaintiff's motion estimated would be spent for this purpose. An affidavit regarding this supplemental request is attached.

## II.   ARGUMENT

In a statutory fee case, a party opposing the fee award bears the burden of asserting specific objections to the reasonableness of the requested fee. *Bell v. United Princeton Properties, Inc.*, 884 F.2d 713 (3d Cir. 1989). A court cannot "decrease a fee award based on factors not raised at all by the adverse party." *Rode*

*v. Dellarciprete*, 892 F.2d 1177, 1183 (3d Cir. 1990) (*citing Bell v. United*

*Princeton Properties, Inc.,* 884 F.2d 713 (3d Cir. 1989)).

Defendant has not challenged the hourly rates sought,[1] nor has it objected to

any of the claimed costs. However, it has identified a number of specific objections

to the time spent on various tasks. Those objections will be addressed below in the

same order in which they were raised in Defendant's brief.


    1.  *To avoid the need for judicial review over relatively minor entries, Plaintiff*
       *will withdraw most of the billing entries to which Defendant has objected.*

In Plaintiff's original fee submission, counsel exercised billing judgment,

and then discounted an additional $9,145.48 of the fee request "in an effort to

avoid disputes over minor entries." (Sabatini Aff., Doc. 81-1, ¶ 39). Nevertheless,

in sections B.1 and B.2 of its brief, Defendant has raised a litany of objections over

minor entries. (Def. Br. pp. 6 – 9). As these objections were in narrative form,

---

[1] By failing to challenge the Plaintiff's rates, Defendant has conceded that she
should be awarded the rates she requested, as a court may not determine a market
rate for attorney's fees based on its sense of what is ordinary and proper, but
instead "must rely upon the record." *Smith v. Philadelphia Housing Authority,* 107
F.3d 223, 225 (3d Cir.1997) (quoting *Coleman v. Kaye*, 87 F.3d 1491, 1510 (3d
Cir.1996)). "Once the plaintiff has made the prima facie showing with respect to
the appropriate hourly rate, that rate may be contested, 'but only with appropriate
record evidence. In the absence of such evidence, the plaintiff must be awarded
attorneys' fees at her requested rate.'" *Evans v. Port Auth. of New York & New
Jersey*, 273 F.3d 346, 361 (3d Cir. 2001)(quoting *Smith,* citations omitted in
original).

Plaintiff has converted them into a spreadsheet format to facilitate the calculations. That spreadsheet is attached as Exhibit A. These entries have a cumulative dollar value of only $3,044.50. Thus, the dollar value of these objections is less than the $9,145.48 discount that had been applied to avoid exactly this type of dispute. It is unnecessary to argue over the merits of the objections, as they are already accounted for in the discount.

There is, however, one aspect of sections B.1 and B.2 of Defendant's brief that could not be accounted for in the attached spreadsheet. Defendant inferred multiple times that it objected to more entries than those which it specifically identified. Instead, Defendant provided "examples" of entries that it found objectionable. (*See* Def. Br. p. 6 ("Examples of such improper billing entries abound"); p. 7 ("all entries relating to Plaintiff's concerns about other non-FDCPA claim issues must also be stricken. See, **e.g.,** id. at p. 2")(bold added); p. 7 ("any and all fees requested for administrative communications with Plaintiff about billing rate changes or similarly administrative issues should be stricken. See, **e.g.**, Fee Statement at pp. 3, 25.")(bold added); and p. 8 (after objecting to a number of specific task entries by KMB as administrative, Defendant further stated that

"numerous administrative task entries by KMB and others are improperly left to constitute portions of the fees requested. See Fee Statement, *passim*.").)[2]

However, the use of "passim" or "examples" to state objections is improper:

> It is, in general, inappropriate for [the party objecting to a fee request] to merely cite 'examples,' and effectively delegate to the Court the work of analyzing all billing entries line-by-line in an effort to identify other entries that [the party] might find similarly objectionable .... It is particularly inappropriate here, because-quite apart from the trespass on the Court's time-the Court cannot know what the [party] considers to be unduly "vague." Federal judges are not required to be telepathic.

*Former Employees of BMC Software, Inc. v. U.S. Sec'y of Labor*, 519 F.Supp.2d 1291, 1326 n. 51 (Ct. Int'l Trade 2007). Here, Plaintiff's objection is not that the time records were "vague." Instead, Defendant complains that the time spent was for tasks that were "administrative" or related to "non-FDCPA claim issues." However, the analysis is no different. It is equally impossible for the Court – or the Plaintiff – to know what entries Defendant considers to be improper.

Other courts are in agreement. "Defendants still have largely left the Court to 'hunt for truffles' by omitting any detailed, line-by-line objection to specific items in Plaintiff's detailed fee petition." *APC Filtration, Inc. v. Becker*, 2008 WL 548765, at *2 (N.D.Ill. Feb.25, 2008) (quoting *Albrechtsen v. Bd. of Regents of the*

---

[2] Plaintiff was unable to address time entries that Defendant did not specifically identify. However, she did account for all of the "examples" when calculating the above-mentioned dollar value of $3,044.50.

*Univ. of Wisconsin Sys.*, 309 F.3d 433, 436 (7th Cir.2002) ("Judges are not like

pigs, hunting for truffles buried in the record")); see also *Reese v. CNH Global*

*N.V.*, 2008 WL 2546936 at \*5 (E.D. Mich. June 20, 2008) *vacated sub nom. Reese*

*v. CNH Am. LLC*, 574 F.3d 315 (6th Cir. 2009) and *order reinstated,* 2011 WL

824585 (E.D. Mich. Mar. 3, 2011) *rev'd sub nom. Reese v. CNH Am. LLC*, 694

F.3d 681 (6th Cir. 2012)(same).[3]

Additionally, by not specifying what items it felt were objectionable,

Defendant has deprived Plaintiff of the opportunity to defend the reasonableness of

these fees. Thus, the Court should not "hunt for truffles," and no further reduction

should be assessed based on the "examples" in sections IV.B.1 and IV.B.2 of

Defendant's Brief.

Finally, a clarification is necessary with respect to Defendant's citation on

page 10 of its brief to *Lohman v. Borough*, 2008 WL 2951070 (M.D. Pa. July 30,

2008)(Caputo, J.) *aff'd sub nom. Lohman v. Duryea Borough*, 574 F.3d 163 (3d

Cir. 2009). Defendant cites this case as an example of a lodestar reduction of

---

[3] An exception to this rule exists where a party wishes to lodge an objection that
cannot reasonably be tied to specific entries. These objections could include that
time spent was excessive because of the simplicity of the case or because of
counsel's expertise, or, that an entire category of work was unreasonable. *Bell v.
United Princeton Properties, Inc.*, 884 F.2d 713, 720 (3d Cir. 1989). For example,
included in this exception would be Defendant's argument in part IV.C of its brief
for a downward adjustment based on degree of success.

"approximately 25% for duplicative, inapplicable and excessive billing." (Def. Br.
p. 10.) However, Judge Caputo did not assess a global 25% reduction as a result of
these factors. Rather, he engaged in a detailed line-by-line analysis and agreed with
various objections that the defendant had raised to specific billing entries. After
eliminating those entries he felt were inappropriate, the net result was that 24.52%
of the requested hours had been reduced. But, there was *no* blanket reduction to the
lodestar. Instead, the sum of the individual entries simply amounted to about 25%
of the total request.

2. *The Summary Judgment Motion was Useful and Fees Should not be
Stricken.*

In opposing Plaintiff's request for fees incurred pursuing the motion for
summary judgment, Defendant ignores all but one of the seven circuit court cases
discussed by Plaintiff, and it does not address *any* of the seven district court cases
discussed by Plaintiff. Instead, Defendant addresses only *Planned Parenthood of
Cent. New Jersey v. Attorney Gen. of State of New Jersey*, 297 F.3d 253 (3d Cir.
2002).

Defendant primarily distinguishes *Planned Parenthood* by noting that a
summary judgment brief, which was never accepted for filing and was never
considered on the merits, was later submitted in lieu of a pre-trial brief and a post-
trial brief. *Id.* at 271. As a result, the district court concluded that the time spent on

6

this motion was necessary, successful, and useful, even though it was never filed. Defendant thus attempts to extrapolate a new test that an unsuccessful motion should only be compensable if it is "thereafter rendered otherwise useful or necessary by being used in place of a pretrial or post-trial brief." (Def. Br. p. 14.)

However, *Planned Parenthood* does not stand for the proposition that such a finding is a requirement before time spent on an unsuccessful motion can be compensable. Rather, the court in *Planned Parenthood* was merely affirming the conclusions of the district court, which had held that time spent on this unfiled motion was compensable for those reasons. At no point in *Planned Parenthood* does the court address whether the time would have been compensable if the motion had instead been filed and ultimately denied, or even whether the time would have been compensable if the brief had not been submitted in lieu of other documents. While *Planned Parenthood* may be factually distinguishable, it lends support to Plaintiff's position that all time spent on a successful claim should be compensable—a position that is further supported by thirteen additional cases.

The remainder of Defendant's argument against an award of fees incurred in connection with the summary judgment motion is focused on: (1) a discussion of the merits of the summary judgment motion, and (2) its disagreement as to whether the summary judgment motion helped Plaintiff streamline the proceedings and to prepare her pretrial submissions in a more efficient manner. However, neither of

7

these arguments justify denying Plaintiff's request for these fees. While the Court

ultimately denied Plaintiff's summary judgment motion, there was a substantial

justification for Plaintiff to file that motion. Plaintiff did not advance a meritless

legal argument. Rather, her positions were all supported by caselaw. As discussed

in Plaintiff's initial brief, the fact that the Court happened to disagree with the

decisions cited by Plaintiff should not be a basis for denying the motion, as

"[l]awsuits usually involve many reasonably disputed issues and a lawyer who

takes on only those battles he is certain of winning is probably not serving his

client vigorously enough; **losing is part of winning**." *Cabrales v. Cnty. of Los*

*Angeles*, 935 F.2d 1050, 1053 (9th Cir. 1991)(emphasis added).

There is also no merit to Defendant's argument that the summary judgment

motion is not compensable because Plaintiff also "seeks separate meaningful fees

for time spent on the work of preparing a pre-trial brief  . . . ." (Def. Br. p. 13.)

Plaintiff has never argued that the summary judgment motion allowed her to avoid

incurring all additional fees. Rather, she was able to spend *less* time preparing for

trial as a result of the Court's holding on the summary judgment motion. As

Defendant noted, the Court denied Plaintiff's motion with respect to whether

Defendant violated the FDCPA by (1) leaving messages with third parties and (2)

failing to identify to third parties that it was a "debt collector." If such a holding

had not been made at the summary judgment stage, Plaintiff's pretrial submissions

would have included extensive argument on these issues. Instead, Plaintiff's pretrial submissions, and trial preparation, focused on only the issues remaining after the summary judgment motion had been decided. Thus, the Court's decision on the summary judgment motion reduced the amount of otherwise compensable fees that Plaintiff had to incur.

Alternatively, even if the Court holds that Plaintiff is not entitled to a *complete* recovery of the time spent on the summary judgment motion, it should not deprive of her of *all* of the fees incurred with respect to this motion. Rather, only a partial reduction should be made. As discussed above, Plaintiff made a 10% supplemental discount in the amount of $9,145.48 to her bill. This discount was made in an attempt to resolve minor disputes about the bill. In its brief, Defendant only specifically objected to $3,044.50 of the time requested by Plaintiff. Thus, an additional $6,100.98 of Plaintiff's supplemental discount remains unused. If the Court determines that a reduction is necessary, it should apply this reduction to the remaining portion of the supplemental discount. After the exercise of billing judgment, $11,875.50 of fees were incurred with respect to the summary judgment motion.[4] Thus, if the Court determines that 50% of the time spent on the summary

---

[4] Defendant erroneously states in its brief that nearly $18,000.00 in time was spent on this motion. (Def. Br. p. 10.) However, this amount fails to account for the 22.2 hours that were written down in the exercise of billing judgment. (See Sabatini Aff., Doc. 81-1 ¶ 38; Flitter Aff., Doc. 81-5 ¶¶ 27-28.) Attached as Exhibit B is a

judgment motion is not compensable, an additional reduction of $5,937.75 would be warranted. As this amount is less than the $6,100.98 of the remaining supplemental discount, Plaintiff should still recover the full amount she has requested.

   3.  *Plaintiff Obtained an Excellent Result and no Downward Adjustment is Warranted.*

Defendant correctly states that the Supreme Court has emphasized that the degree of success in litigation is the most critical factor in assessing whether the lodestar represents a reasonable fee. (Def. Br. at p. 14 citing *Hensley v. Eckerhart*, 461 U.S. 424 (1983)). Defendant then raises a number of arguments to attempt to portray this case as unsuccessful. Each of these arguments fails.

First, Defendant claims that the only benefit obtained for Plaintiff was "a *statutorily designated* $1,000.00 award, based on what was found to be *a technical violation* of the FDCPA." (Def. Br. p. 14 (emphasis added).) However, the award of $1,000.00 was not "statutorily designated." Instead, the FDCPA allows for statutory damages in an amount "**not exceeding** $1,000.00." 15 U.S.C. § 1692k(a)(2)(A)(emphasis added). Thus, a plaintiff is not necessarily entitled to receive this amount. In fact, where there is "a single, trivial, and unintentional

spreadsheet containing the calculations demonstrating that $11,875.50 was billed on the summary judgment briefs after the exercise of billing judgment.

violation of the Act, it is within the court's discretion to decline to award statutory damages at all." *Graziano v. Harrison*, 950 F.2d 107, 114 (3d Cir. 1991). Here, where the Plaintiff obtained the maximum statutory damages[5] that were available, she has had a high degree of success. *See e.g., Tolentino v. Friedman*, 46 F.3d 645, 653 (7th Cir. 1995)(judgment entered for consumer under the FDCPA with a recovery of "the maximum statutory damages allowed to an individual plaintiff. . . . [t]herefore, Tolentino has obtained a high degree of success.")

Defendant also asserts that its conduct "was found to be a technical violation of the FDCPA." (Def. Br. p. 14). Of course, no finding was made that there was only a single violation of the Act; nor was there any finding that Defendant's violations were merely "technical." Instead, the jury determined that the Defendant's numerous and unjustified calls to Plaintiff's neighbors and relatives violated the Act.[6]

---

[5] Although Defendant mentions that "[n]o actual damages were proved or awarded . . . ." (Def. Br. p. 2), it fails to remind the Court that Plaintiff did not present a claim for actual damages at trial. And, as explained *infra*, Plaintiff's settlement posture did not include a demand for actual damages.

[6] Ironically, if Defendant's argument that the violation was merely "technical" were accepted, then such a finding would justify a *greater* attorney's fee. Under *Graziano*, the Court has the discretion to award no fee at all for a trivial violation of the Act. So, an award of the maximum statutory damages available for a mere "technical" violation would be a truly excellent result that would justify a fully compensable fee.

Next, Defendant claims that "there was no other positive result obtained *for Plaintiff* by prosecution of this case, . . ." (Def. Br. p. 14)(emphasis added). This argument demonstrates a misunderstanding of a fundamental purpose of the FDCPA. The Act assumes that consumers "benefit from the deterrent effect of civil actions brought by others." *Jacobson v. Healthcare Fin. Servs., Inc.*, 516 F.3d 85, 91 (2d Cir. 2008). Congress "intended the FDCPA to be self-enforcing by private attorney generals." *Weiss v. Regal Collections*, 385 F.3d 337, 345 (3d Cir. 2004). Thus, by bringing this action, Plaintiff has furthered Congress's goals with respect to the FDCPA. If enough consumers bring such actions, the deterrent effect will encourage debt collectors to refrain from engaging in the abusive behavior that the Act prohibits. Thus, it is irrelevant that *Plaintiff's* sole individual benefit in prosecuting the case was that she obtained the maximum available statutory damages, as the deterrent effect of her case is also a "positive result."

Defendant also characterizes Plaintiff's original settlement demands as coercive and implies that the demands were grossly inflated based on allegations of actual damages. (Def. Br. p. 15)(asserting that the case included a "meritless claim for actual damages, . . . Indeed, the $1,000.00 statutory damage award is approximately, [sic] 25 percent – a mere fraction – of Plaintiff's original settlement

demand of $3,950.00,[7] served together with the Complaint, in what might reasonably be described as a coercive settlement tactic.")

Defendant's bald comparison of the $1,000.00 statutory recovery to the original settlement demand is unfair. Instead, to accurately compare that demand to the result obtained at trial, one would also need to add reasonable attorney's fees and costs. $2,568.33 had already accrued as of the date of the demand. (See Exhibit C). The sum of these two figures is $3,568.33, which is only $231.67 less than the $3,850.00 demand.

Additionally, a plaintiff is permitted to recover for counsel time that is expected to be spent *after* a settlement or judgment is reached. *See Andrews v. Prof'l Bureau of Collections of Maryland, Inc.*, 270 F.R.D. 205, 208 (M.D. Pa. 2010)(Nealon, J.)("It is not unreasonable to assume that counsel may accrue additional fees after [a Fed. R. Civ. P. 68] offer is accepted, for example, those associated with collecting and distributing the settlement check to his client. Although Plaintiff could choose to negotiate away his right to attorney's fees, such

---

[7] In a footnote, Defendant quibbles with the settlement offer, asserting that the offer served with the complaint suggested a demand of $3,850.00 whereas the actual settlement document that was included with the complaint instead demanded $3,950.00. (Def. Br. p. 15.) However, two offers were presented at the same time. One was an offer for $3,950.00 using a comprehensive settlement agreement. The other offer was to simply dismiss the case with prejudice upon receipt of a payment of $3,850.00, and without the execution of any other settlement document. (See Doc. 88-1, p. 2, last full paragraph ("*as an alternative* to settling using the enclosed written agreement, . . .")(emphasis added)).

13

a decision cannot be forced upon him.") The $231.67 cushion in the original fee demand represents less than three-fourths of one hour of time. It is unlikely that this cushion would actually be sufficient to cover the time that would accrue after an acceptance of the offer.

Defendant's implication that the initial demand was grossly inflated based on an actual damages claim is unfounded. Instead, the demand barely covered the potential statutory damages and the accrued fees and costs. And, the demand was not a "coercive settlement tactic." Instead, it was an opportunity for Defendant to resolve the case reasonably and before additional fees accrued. However, Defendant ignored this opportunity and refused to discuss settlement. (Sabatini Aff., Doc. 81-1, ¶¶ 42-44.)

Defendant again cites to *Lohman v. Borough*, 2008 WL 2951070 (M.D. Pa. July 30, 2008)(Caputo, J.) *aff'd sub nom. Lohman v. Duryea Borough*, 574 F.3d 163 (3d Cir. 2009). Defendant cites to this case as an example of a lodestar reduction based on a limited degree of success. However, *Lohman* is easily distinguishable. There, the plaintiff initially demanded $500,000.00 to settle, then rejected a settlement offer of $75,000.00, and ultimately recovered only $12,205.00 at trial. The court observed that the spurned settlement offer was "significantly greater" than the amount that she ultimately recovered.

14

Here, the opposite situation occurred. *Defendant* ignored the early offers to settle, and then finally offered a mere $500.00, *inclusive* of attorney's fees, shortly before the pre-trial conference. (Sabatini Aff. ¶ 43).[8] Thereafter, a verdict for the full amount of statutory damages was obtained. Thus, the discussion in *Lohman* regarding success is not relevant here, as Mrs. Evankavitch made a reasonable early offer to settle before finally obtaining a favorable result.

Finally, on multiple occasions Defendant describes the fees as "disproportional." However, it makes no attempt to distinguish or counter the cases on this issue that are provided on pages four through six of Plaintiff's initial brief. Again, "[t]he whole purpose of fee-shifting statutes is to generate attorneys' fees that are *disproportionate* to the plaintiff's recovery." *Millea v. Metro-N. R. Co.*, 658 F.3d 154, 169 (2d Cir. 2011)(emphasis in original). Reducing the fee award on this basis would deter competent counsel from handling FDCPA cases, and is contrary to the intent of Congress.

### III.   CONCLUSION

Apart from its assertions regarding the summary judgment brief and the degree of success, Defendant has only specifically objected to $3,044.50 in fees.

---

[8] The parties had additional settlement discussions, including some efforts at the pre-trial conference with the assistance of the Court. However, on November 15, 2013, the parties agreed that all future dollar amounts offered by either party would be kept confidential and not disclosed to the Court for any purpose, unless a settlement was reached. (Sabatini Aff. ¶ 44.)

However, these objections are mooted by the $9,145.48 supplemental discount made by Plaintiff. Thus, there is no need for the Court to review these minor objections.

As discussed above, Defendant has also failed to object with the requisite specificity to other portions of the requested fee. Instead, Defendant merely has provided *examples* of items it believes are objectionable. Failure to specifically object puts the Court in inappropriate position of having to "hunt for truffles."

There is also no merit to Defendant's arguments that Plaintiff should not be compensated for time spent on her summary judgment motion. Defendant failed to address all but one of the cases cited in support of Plaintiff's argument that a party can recover fees for time spent on unsuccessful efforts related to a prevailing claim. Defendant also argues that the unsuccessful motion could not have streamlined the remaining proceedings. However, the Court's decision on the summary judgment motion significantly reduced the amount of time that Plaintiff spent on these pretrial matters, because the case involved fewer issues.

Alternatively, if the Court determines that Plaintiff should be permitted to recover only a portion of the fees she incurred on the summary judgment motion, it should first account for the remaining $6,100.98 of Plaintiff's supplemental discount. Thus, if the Court believes that only 50% of the summary judgment time should be compensable, no further discount is necessary, as Plaintiff has already

16

effectively applied a discount exceeding this amount. As a result, the Court should still award Plaintiff the full amount of the fee petition.

Plaintiff was also successful in this litigation. She recovered the maximum statutory damage award that was permitted by the FDCPA. Also, by obtaining a successful result, she furthered the policy of encouraging compliance with the Act.

Plaintiff also attempted to reasonably settle this matter from the outset. However, Defendant ignored these attempts, and did not make a single settlement offer until shortly before the pretrial conference. And, this offer was only one half of the statutory damage award that Plaintiff received at trial. Additionally, it failed to provide any compensation for Plaintiff's attorney's fees and costs. Thus, Defendant cannot legitimately argue that Plaintiff is unsuccessful as compared to her settlement opportunities.

In addition to the amount originally requested, Plaintiff now seeks $6,673.50 in fees spent briefing this fee application.[9] An affidavit regarding this supplemental request is attached as Exhibit D. Thus, Plaintiff respectfully requests that the Court award her a total of $93,764.79, which encompasses the originally requested sum

---

[9] The time spent on these briefs amounts to 25.5 hours. This time was reasonable. Plaintiff's briefs totaled approximately 29 pages. The time spent was thus less than 1 hour per page. Courts have determined the reasonableness of time spent on briefs based on the number of pages, and have allowed far more than one hour per page. *See, e.g. Maldonado v. Houstoun*, 256 F. 3d 181 (3d Cir. 2001)(allowing about 3 hours per page) and *Styers v. Pennsylvania*, 621 F. Supp. 2d 239 (M.D. Pa. 2008)(allowing 3.6 hours per page).
.

of $87,091.29 in fees and costs, in addition to the $6,673.50 in fees spent on briefs related to this fee application.

s/ Carlo Sabatini
Carlo Sabatini

### Certificate of Service

Defendant is being served through the CM/ECF system.

s/ Carlo Sabatini
Carlo Sabatini

### Certificate of Word Count

This document contains 4,758 words and complies with the word-count limit described in L.R. 7.8(b)(2). I relied on the word count feature of the word processing system used to prepare this brief.



s/ Carlo Sabatini
Carlo Sabatini